UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Martinez,

                              Plaintiff,              **OPINION AND ORDER**

        -against-                         20 Civ. 8705 (AEK)

280 Katonah Corp., et al.,

                           Defendants.
-------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

      Plaintiff Daniel Allan Martinez commenced this action on October 19, 2020, asserting claims against Defendants 280 Katonah Corp. d/b/a La Familia Pizza & Pasta of Katonah, Frok Duhanaj, 888 Work, LLC d/b/a La Familia Pizza & Pasta of Cross River, and Mirash Vataj for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") based on the alleged failure to pay the minimum wage, pay overtime wages, pay spread-of-hours wages, provide wage notices, and provide accurate wage statements. ECF No. 1. Before the Court is the parties' application for approval of a settlement agreement in accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). ECF No. 38 ("Cheeks Letter"). For the reasons that follow, the Court APPROVES the settlement agreement.

## DISCUSSION

      In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor." Fisher v. SD Prot. Inc., 948 F.3d 593,

---

[1] The parties have consented to the Court's jurisdiction under 28 U.S.C. § 636(c). ECF No. 35.

599 (2d Cir. 2020). Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable. See, e.g., Cronk v. Hudson Valley Roofing & Sheetmetal, Inc., No. 20 Civ. 7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021). When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher, 948 F.3d at 600 (quoting Wolinsky, 900 F. Supp. 2d at 335). In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

Wolinsky, 900 F. Supp. 2d at 336 (quotation marks omitted). "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Fang Xiao v. Grand Sichuan Int'l St. Marks, Inc., No. 14 Civ. 9063, No. 15 Civ. 6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement, having presided over the settlement conference in this matter at which the parties reached agreement to

resolve the case—a process that involved extensive discussion about the merits of the case with the parties—and having considered the totality of the circumstances, the Court finds that the parties' settlement agreement is fair and reasonable.

All five Wolinsky factors weigh in favor of approval. First, the settlement agreement provides for a total settlement payment of $60,000, with $39,522.67 payable to Plaintiff and $20,477.33 payable to Plaintiff's counsel as attorneys' fees and costs. Plaintiff claims that he would have been entitled to a total of $128,749.40 in unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages for unpaid wages, pre-judgment interest, and statutory damages had he prevailed at trial. See Cheeks Letter at 4. The amount payable to Plaintiff in the proposed settlement thus constitutes approximately 31 percent of Plaintiff's total alleged damages and approximately 73 percent of Plaintiff's total alleged minimum wage, overtime wage, and spread-of-hours premium owed.[2] This percentage of recovery is in line with

---

[2] The dollar amounts for the unpaid wages set forth in the Cheeks Letter are based on calculations provided by Plaintiff in an ex parte letter and detailed spreadsheet submitted to the Court in advance of the settlement conference and discussed with the Court during that conference. There are two issues with the spreadsheet of calculations provided to the Court.

First, based on the information contained in the Cheeks Letter and the ex parte letter, it appears as though the spreadsheet lists six weeks—from late January 2018 through early March 2018—as weeks during which Plaintiff worked as a salad maker at the Katonah location. Yet in the Cheeks Letter and in the Complaint, Plaintiff claims that he worked only as a delivery driver from January 2018 to March 2018, and then as a salad maker from March 2018 to May 2018. See Cheeks Letter at 1; ECF No. 1 at ¶¶ 40-43. According to Plaintiff, when he worked as a delivery driver during this period, he worked approximately 20-27 hours per week and was paid $8 per hour worked, and when he worked as a salad maker, he regularly worked approximately 73 hours per week and was paid a weekly salary of $700. See id. Were Plaintiff's damages from January 2018 through early March 2018 calculated as if he worked 27 hours per week at a rate of $8 per hour during the aforementioned six weeks, his total unpaid wages would be reduced by slightly more than $10,000, exclusive of any change in prejudgment interest, and the proposed settlement amount would represent an even higher percentage of Plaintiff's total alleged damages.

3

recovery amounts in other FLSA cases in this District where courts have approved settlement terms.  See, e.g., Santos v. YMY Mgmt. Corp., 20 Civ. 1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases).

Second, the settlement will enable the parties to avoid significant additional expenses and burdens associated with establishing their claims and defenses.  While the parties have conducted some discovery to date, they have not taken any depositions in this matter, and the parties likely would have engaged in additional motion practice regarding the issue of subject matter jurisdiction prior to trial.[3]  In addition, the number of legal issues identified in the Cheeks Letter make clear that the parties also likely would have filed summary judgment motions or extensive pretrial motions in limine to address various disputes.

Third, both parties would have faced significant litigation risks if this case had proceeded to trial.  Defendants assert that they have evidence contradicting Plaintiff's claims regarding his wages and hours worked, generally deny Plaintiff's claims, and argue that he was properly

---

Second, the dollar amount listed for pre-judgment interest in the ex parte submission is slightly higher than the dollar amount listed for pre-judgment interest in the Cheeks Letter.  Since the total alleged damages should be reduced to account for the inconsistency in the January 2018 - March 2018 calculations, the amount of pre-judgment interest would have to be recalculated and would also be slightly reduced.  This also would result in the proposed settlement amount reflecting a higher percentage of Plaintiff's total alleged damages.  While the Court notes these discrepancies in the interest of thoroughness and accuracy, neither item has any impact on the Court's overall conclusion that the proposed settlement is fair and reasonable.

[3] At the Court's direction, the parties had already submitted letter motions regarding the issues of subject matter jurisdiction and limiting the scope of discovery.  See Docket Sheet, Minute Entry for 03/22/2021; ECF Nos. 30-31.

compensated. Both Plaintiff and Defendants claim they have witnesses who would testify regarding the work duties actually performed by Plaintiff. See Cheeks Letter at 5. It is certainly possible that Plaintiff's recovery at trial would have been substantially less than the proposed settlement amount. Because of the anticipated risks and costs involved in pursuing this matter through discovery and trial, settlement is an effective means of resolving the litigation for both parties.

Fourth, the Court presided over the settlement conference and therefore observed firsthand that the proposed settlement is the product of arm's-length bargaining between experienced counsel.

Fifth, the Court has no reason to believe that the proposed settlement is the product of fraud or collusion.

Moreover, none of the factors set forth in Wolinsky that weigh against approving a settlement exist in this case. This is a case involving an individual Plaintiff—the Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit. Given that the employment relationship between Plaintiff and Defendant has ended, there is no likelihood that the circumstances that gave rise to this lawsuit will recur. The Court is not aware of a history of FLSA non-compliance by these employers, and the complaint in this matter does not appear to raise novel factual or legal issues that would further the development of law in this area.

The proposed settlement agreement also does not contain any problematic provisions that would preclude court approval. There are no inappropriate confidentiality or non-disparagement provisions, see Cortes v. New Creators, Inc., No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016), and the settlement agreement contains a release that is appropriately

5

limited to the wage-and-hour claims asserted in this action and related claims that could have been asserted, see, e.g., Illescas v. Four Green Fields LLC, No. 20 Civ. 9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021); Cheeks Letter Ex. 1 at 3, 5.

With respect to attorneys' fees and costs, the proposed settlement provides for Plaintiff's counsel to receive $19,761.33 in fees—which amounts to one-third of the proposed settlement amount, net of costs—as well as $716 in costs, for a total of $20,477.33.[4] "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." Santos, 2021 WL 431451, at *2 (quotation marks and brackets omitted). "However, even when the proposed fees do not exceed one third of the total settlement amount, courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." Id. (quotation marks omitted). Appropriately, Plaintiffs' counsel has submitted contemporaneous time records to substantiate the fee application. See Fisher, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs.").

Applying the lodestar method, Plaintiff's counsel spent a total of 75.6 hours on this case. Because the Court finds the requested fee to be reasonable, it will not address whether the hourly rates and number of hours expended on this case, as reflected in Plaintiff's counsel's billing records, are themselves reasonable. The proposed attorneys' fee of $19,761.33 represents approximately 67 percent of the lodestar amount, which is fair and reasonable given the facts and circumstances of this case. See Gervacio v. ARJ Laundry Servs. Inc., No. 17-cv-9632 (AJN), 2019 WL 330631, at *3 (S.D.N.Y. Jan. 25, 2019) ("The true lodestar amount is therefore greater

---

[4] The Cheeks Letter only specifically requests $716 in costs, see Cheeks Letter at 8, even though the billing records submitted as Exhibit 2 to the Cheeks Letter reference $732.81 in expenses. The Court assumes that Plaintiff's counsel does not seek reimbursement of the additional expense listed in Exhibit 2.

6

than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees . . . .").

In addition, Plaintiff's counsel seeks costs of $716 and has provided invoices documenting these costs. Counsel in FLSA cases may be awarded reasonable out-of-pocket expenses that are properly substantiated. See, e.g., Cortes, 2016 WL 3455383, at *6 ("Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient.") (citations omitted). The Court finds that the request for costs is reasonable, as the costs are sufficiently substantiated and "of the type commonly reimbursed by courts in this District." Id.

## CONCLUSION

For the reasons set forth above, the Court finds the proposed settlement to be fair and reasonable, and the settlement agreement as filed at ECF No. 38-1 is hereby APPROVED.

Plaintiff's counsel is to receive $20,477.33, with $19,761.33 allocated to attorneys' fees and $716 to costs. Plaintiff is to receive the balance, $39,522.67.

The parties are hereby ordered to file an executed copy of the Stipulation and Order of Dismissal with Prejudice, an unsigned copy of which is attached as Exhibit A to the Settlement Agreement and Release, to be so ordered by the Court. The parties may file the Stipulation and Order of Dismissal with Prejudice in accordance with the schedule agreed to by the parties in Paragraph 3.b of the proposed Settlement Agreement and Release. See ECF 38-1.

Dated: July 15, 2021
      White Plains, New York               **SO ORDERED.**

                                                                  ANDREW E. KRAUSE
                                                                  United States Magistrate Judge